## M'Reynolds *against* M'Cord.

Preliminary to proof of the contents of a written instrument, lost or destroyed, and involving proof of its execution, stands proof of pre-existence, in the condition of a valid instrument. The act of destruction is, itself, the best evidence of which such a case is susceptible, because it has put it out of the power of the party to submit the paper to witnesses of the hand-writing; and the act of the spoiler is in its nature equipollent to confession. But before he can be fixed with the character of a spoiler, the purport of the paper must be proved to have been what it is surmised to have been.

The assertion of a written agreement, by a plaintiff in ejectment, by which he claims title, does not estop him from asserting another, and an independent one resting in parol.

The act or assertion of one of several plaintiffs in ejectment, can prejudice no one but himself, and not even himself, if made in ignorance of his rights.

ERROR to the common pleas of *Columbia* county.

Ejectment for the undivided half of two hundred and fifty acres of land, by Hannah M'Cord, Benjamin Rees, Vaniah Rees, Mary Rees, Daniel Rees, and David Rees against John M'Reynolds.

It appeared in evidence, that James Dill and Matthew Dill were the owners of this land, and that Matthew's title afterwards became vested in James. The plaintiffs alleged that the title to the land was in dispute some time between 1811 and 1815, when an agreement in writing was entered into between James Dill and Daniel Rees, by which the latter was to have one half of the land in dispute, for his services and expenses in carrying on the law suit for the land to conclusion, in case it should be recovered. This in connection with proof of performance, by Daniel Rees, and that the plaintiff or his heirs-at-law, formed the foundation of the plaintiffs' claim to recover. The principle question in the cause in this court, arose out of the attempt of the plaintiffs to establish the written agreement referred to. The plaintiff called a witness who said: "There was an agreement between James Dill and Daniel Rees; it was concerning this land, the 'Buckhorn Tract.' My brother (James Dill) burnt the agreement. He let on he wanted to see some of the papers, and he got them and destroyed them, and said it would do me no good, and no matter what became of it. He then burnt it. I never read that paper; it was not read over to me. This was the spring after my husband's death; he died in November 1821."

And the other witness testified: "I think about the year 1817 or 1818, Daniel Rees came to Buckhorn farm; he showed me what he said was his title to it; it was a paper with the signature of James Dill. I was not acquainted with the hand-writing of James Dill; never saw him write. I read the paper; it purported to be

signed by James Dill. Daniel Rees was then living on the land when he showed me the paper; he told me he claimed by virtue of it; claimed half."

The plaintiffs' counsel then proposed to ask the witness what were the contents of the paper?

The defendant's counsel objected to the evidence, on the ground that the execution of the paper had not been proved.

The court overruled the objection, admitted the evidence, and sealed a bill of exceptions.

The witness then proved the contents of the paper to be what was alleged, by the plaintiffs, as the foundation of their claim.

The plaintiffs then proceeded to give evidence of a suit formerly pending for the same land, and of the services rendered by them, in attending to and conducting it, which were the consideration for the agreement referred to.

The plaintiffs further offered to prove, "that James Dill, in the year 1813, requested Daniel Rees to proceed with said ejectment to a conclusion, and promised to convey to him one-half of the land in fee, for his services and expenses, if said land should be recovered from the Hiesters; that said Rees employed counsel and carried on the suit to a conclusion, and was put into possession."

Defendant's counsel objected to the evidence, on the ground that the alleged parol agreement, if any, was merged in the written agreement, which they had failed to prove."

The court below overruled the objection, and sealed a bill of exceptions; the evidence was given.

Another point arose out of the following agreement, given in evidence by the defendant, which was executed by Vaniah Rees, one of the plaintiffs, and Matthew Dill and James Dill, upon which the said Vaniah Dill had received the 300 dollars mentioned therein.

"Memorandum of an agreement, made and firmly agreed upon, on the 3d of November 1828, between Vaniah Rees, innkeper, at the Buckhorn tavern, in Hemlock township, of the one part, and Matthew Dill and James Dill, proprietors of the Buckhorn farm, of the other part; witnesseth, that the said Vaniah Rees, in consideration of the sum of 300 dollars, to him in hand paid, this day, by the said Matthew and James Dill, as considered in full payment for all the buildings and erections now on said farm, and from all other charges that he, the said Vaniah Rees, his heirs or assigns, may or shall have claim to in and about the premises, and it is further stipulated and agreed upon between the said contracting parties, that the said Matthew and James Dill, doth this day, lease, let, and to farm at all the aforesaid farm, known by the name of the Buckhorn tract, and the buildings now erected, until the 1st day of April next, for the following consideration, to wit: That he, the said Vaniah Rees, shall and will support and maintain his ancient and infirm mother in lodging, boarding, and apparel, suit-

[M'Reynolds v. M'Cord.]

able for a woman in her declining situation, and to pay all the doctor's bills and all other necessary charges, that may be necessary for her support and comfort, to which, when complied with, by said Vaniah Rees, shall be considered a full compensation until the expiration of the aforesaid 1st day of April next, providing the said Vaniah Rees shall deliver the aforesaid farm and buildings that are now erected on said farm, in as good order as they are at this time, reasonable wear excepted, and to make use of all the manure and all that shall be made in future, to be made use of as aforesaid, and not to farm more than one-third of the farm land in one year, and to sow a sufficient quantity of grass seed on all the land; he shall farm with winter grain, and to pay all the taxes for said year; and it is also understood, that the said Vaniah Rees, shall have of manuring a small piece of land, that was taken off the Buckhorn farm, and owned by him, in the same manner as he shall manure the aforesaid farm; all which agreement is to be complied with, under the forfeiture of the aforesaid 300 dollars."

On the subject of this agreement, the court instructed the jury, "that it was not a legal conveyance of the land, and in any event, could only operate upon the right of Vaniah Rees, and not of the other plaintiffs. There is no evidence that Vaniah Rees, at this time knew of the destruction of the contract, under which, he was entitled to an interest in the land, while, on the other hand, James Dill knew he had no right to the interest claimed by the plaintiffs. Under these circumstances, there is nothing in the lease, or in the payment of the 300 dollars, or in any transaction under it, which can give any equity to those who are defending this suit. If James Dill destroyed the contract with Daniel Rees, and Vaniah Rees was kept in ignorance of his rights, the lease and the transactions connected with it, instead of giving the Dills any equity, would be denominated in chancery, a means of ' double hatching the cheat.' "

The opinions of the court, in admitting the evidence, contained in the bills of exceptions, and in their charge to the jury, were assigned for error.

*Cooper* and *Bellas*, for plaintiffs in error.
*Greenough* and *Hepburn*, for defendants in error.

The opinion of the Court was delivered by

GIBSON, C. J.—Preliminary to proof of contents and involving proof of execution, stands proof of pre-existence in the state of a valid instrument. This is a rudimental principle, which is not contested. Now there was no specific proof of execution; and what was there else? Every thing is to be presumed *in odium spoliatoris;* and had it certainly appeared that the destroyed paper purported to be an agreement, such as is attempted to be established, it would have sufficed for the admission of subsequent evidence of its contents. In an anonymous case in *Ld. Raym.* 731, a sworn

copy of the defendant's note, torn up by him, was allowed to go in proof of it; and Lord Holt remarked, that a small thing will supply an instrument destroyed by one, against whose title it operated. So in Young *v.* Holmes, 1 *Stra.* 71, an attorney who had examined a lease withheld, was admitted to prove the contents of it. In neither of those cases does it appear that specific evidence of execution was given; and it seems clear on principle, that if there be no subscribing witness, the act of destruction is itself the best evidence of which such a case is susceptible, because it has put it out of the party's power to submit the paper to witnesses of the handwriting, and the act of a spoiler is in its nature, equipollent to confession. But before he can be fixed with the character of a spoiler, the purport of the paper must be proved to have been what it is surmised to have been. The presumption in favour of innocence, which arises wherever there is room for it, excludes intendment, that a paper destroyed by a man in a confidential relation, was of value to any one. There are few men who have not papers which it would be not only innocent, but prudent, to destroy. Now the evidence of contents by Barton, unless preceded by evidence of execution or its substitute, destruction, was incompetent. If, however, the paper destroyed were shown to have been an agreement for the land, it would raise a presumption of identity sufficient to dispense with the ordinary proof of execution, and let in the contents of the paper read by Barton. The question, then was narrowed to the point of identity, the affirmative of which, being the proper equivalent of proof of execution, lay with the party making title under the instrument; and the matter here is resolved into a critical inquiry into the relative duty of the parties to have followed out to a satisfactory conclusion, the examination touching the knowledge of the witness, whose testimony was to become the basis of proof of contents. She testified affirmatively that there *was* an agreement betwixt her husband and her brother about the land, and that her brother destroyed it; but that she had not read it, and that it had not been read to her. How then could she prove its identity? Her positive assertion goes for nothing, if she be not qualified to testify by an adequate knowledge of the fact. In strictness, proof of knowledge ought to have preceded the proof of identity, as it does in the case of a witness to handwriting who is not permitted to speak before he has shown a competent knowledge of the signature to be identified. It would seem, therefore, that the plaintiffs in making out a circumstance to stand for proof of execution, ought to have shown a competent degree of knowledge in the witness, drawn from the declarations of him who destroyed the paper, or from some other source equally satisfactory, if such there were. Had that been done, it would have produced a presumption of identity and consequent execution, sufficient to make way for the evidence of contents.

The evidence of a parol agreement to convey, was properly

[*M'Reynolds v. M'Cord.*]

admitted. The plaintiffs were not estopped by the assertion of one agreement, from asserting another and an independent one. A party in ejectment may certainly urge more than one title, and recover on the superior one. If, then, the plaintiffs can show a parol agreement to convey, partly executed by performance on the one side and delivery of possession under the contract, not to a mere agent, on the other, they may perhaps recover.

The remaining exceptions disclose nothing like error. It is barely necessary to say, that the acknowledgment of Dill's title by Vaniah Rees, could prejudice no one but himself; and not even himself, if made in ignorance of his right; that the Dills could not strengthen their title by improvement, if the possession were gained by a fraudulent destruction of papers; that the Reeses were not bound to give notice of their title, if they were ignorant of it, or the Dills knew of it; that the question of performance on the part of the Reeses, depending as it does on matter of record, was properly determined by the court; and that it was immaterial to the law of the case, with which alone we have to do, whether the brother and sister were both implicated in the alleged fraud. The exceptions to the charge are therefore not sustained.

Judgment reversed, and *a venire facias de novo* awarded.